**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
LUFKIN DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| *ex rel.* | § | |
| THE STATE OF TEXAS | § | |
| *ex rel.* | § | |
| KAREN REYNOLDS | § | |
|    Plaintiffs, | § | |
| | § | |
| v. | § | |
| | § | |
| PLANNED PARENTHOOD | § | |
| GULF COAST F/K/A PLANNED | § | Civil Action No. 9-09-CV-124 |
| PARENTHOOD OF | § | |
| HOUSTON AND SOUTHEAST | § | |
| TEXAS, INC., | § | |
| | § | |
|    Defendant. | § | |

**<u>RELATOR'S RESPONSE IN OPPOSITION TO MOTION TO
DISMISS THIRD AMENDED COMPLAINT</u>**

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ....................................................................................................... ii

SUMMARY OF THE ARGUMENT ........................................................................................... 1

ISSUES PRESENTED................................................................................................................... 2

ARGUMENT .................................................................................................................................. 2

I.   RELATOR'S CLAIMS UNDER § 32.039 OF THE TEXAS HUMAN RESOURCES CODE
     ARE PROPERLY PLED AS PRIVATE CAUSES OF ACTION........................................... 2

II.  RELATOR'S TMFPA CLAIMS ARE PROPERLY PLED PURSUANT TO THE
     APPLICABLE FOUR-YEAR STATUTE OF LIMITATIONS ................................................ 3

III. RELATOR'S FCA AND TMFPA CLAIMS ARE SUFFICIENTLY PLED TO SATISFY
     RULES 8(a) AND 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE ................... 4

     A.  The TAC Satisfies the Requirements of Rule 8(a) ....................................................... 5

     B.  The TAC is Pled with Sufficient Particularity to Satisfy Rule 9(b) ............................. 9

IV. THE TAC PROVIDES A SUFFICIENT FACTUAL BASIS REGARDING ALL OF
     DEFENDANT'S CLINICS ................................................................................................. 14

CONCLUSION.............................................................................................................................. 17

# TABLE OF AUTHORITIES

## Cases

*Ashcroft v. Iqbal*, 129 S.Ct. 1937 (2009) ...............................................................................5, 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) .....................................................................5

*Sealed Appellant I v. Sealed Appellee I*, 156 Fed. App'x 630 (5th Cir. 2005) ...........................16

*United States ex rel. Davis v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 120730,
(N.D. Tex. Nov. 15, 2010) ................................................................................................13

*United States ex rel. Fitzgerald v. Novation, L.L.C.*, No. 3:03-CV-1589-N, 2008 U.S.
Dist. LEXIS 119702 (N.D. Tex. Sept. 17, 2008).........................................................4

*United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805
(E.D. Tex. 2008) ...............................................................................................................4

*United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180 (5th Cir. 2009) ................. 9-12, 14, 16

*United States ex rel. Harris v. Alan Ritchey, Inc.*, 2006 U.S. Dist. LEXIS 91921
(W.D. Wash. Dec. 20, 2006).............................................................................................16

*United States ex rel. King v. Alcon Labs.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005)................. 12-13

*United States ex rel. King v. Solvay S.A.*, 2011 U.S. Dist. LEXIS 117590
(S.D. Tex. Oct. 12, 2011)...........................................................................................4, 12

*United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899
(5th Cir. 1997).................................................................................................................11

*United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709
(N.D. Tex. 2011)........................................................................................................4, 15, 16

*Wagemann v. Doctor's Hosp. of Slidell, LLC*, 2010 U.S. Dist. LEXIS 79433
(E.D. La. Aug. 5, 2010) ....................................................................................................12

*Williams v. WMX Techs., Inc.*, 112 F.3d 175 (5th Cir. 1997)....................................................9, 11

## Statutes

31 U.S.C. § 3729(a) .......................................................................................................................9, 13

Tex. Civ. Prac. and Rem. Code § 16.051.....................................................................................4

Tex. Hum. Res. Code § 32.039 .................................................................................1, 2

Tex. Hum. Res. Code § 36.101 .................................................................................1, 2

Tex. Hum. Res. Code § 36.002 .............................................................................1, 2, 13

Tex. Hum. Res. Code § 36.104(b) ................................................................................3

## **Rules & Regulations**

Fed. R. Civ. P. 8(a) ...........................................................................................1-2, 4-6

Fed. R. Civ. P. 9(b) ......................................................................................... *passim*

## **Other**

Acts 2007, 80th Leg., ch. 29 (S.B. 362), § 6 ................................................................3

## SUMMARY OF THE ARGUMENT

Defendant Planned Parenthood of Gulf Coast (PPGC) has filed a Motion to Dismiss Relator's Third Amended Complaint (TAC) on the grounds that the TAC alleges claims for which no private cause of action exists, alleges claims outside the statute of limitations, and fails to allege facts sufficient to satisfy Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. Each of Defendant's arguments is flawed.

First, Relator has properly pled claims under Texas Human Resources Code § 32.039, as provisions of the Texas Medicaid Fraud Prevention Act (TMFPA), Texas Human Resources Code §§ 36.101 and 36.002, expressly permit a private individual to bring such claims. Second, relevant Texas law, including case law subsequent to the 2007 amendments to the TMFPA, permits Relator to pursue TMFPA claims for a four-year statutory period, with which she has complied. Third, despite Defendant's apparent reading of the TAC, Relator has pled facts sufficient to withstand scrutiny under both Rule 8(a) and Rule 9(b) of the Federal Rules of Civil Procedure. The TAC makes unmistakably clear that throughout the duration of Relator's employment by PPGC between 1999 and 2009, PPGC required its employees to operate pursuant to corporate policies that resulted in the knowing billing of both the Texas and United States governments for (1) services that were known to be medically unnecessary or not covered by Medicaid and (2) services that were never actually provided. Relator has provided within the TAC sufficient facts to identify the individuals involved in such conduct (who), the services for which PPGC fraudulently billed the government (what), the time period during which such conduct occurred (when), the clinics at which such conduct occurred (where), and the process by which claims for such services were ultimately submitted to the government (how). Defendant's argument that the allegations in the TAC are as likely to demonstrate PPGC's compliance with the law as fraud on its part is entirely without merit,

as the TAC expressly alleges that PPGC's policies required billing for services *regardless* of whether those services were medically necessary, covered by Medicaid, or ever actually provided. Such billing runs directly counter to applicable state and federal law, and the exhibits to PPGC's Motion to Dismiss do nothing to alter this reality.

## ISSUES PRESENTED

1.  Are Relator's claims under § 32.039 of the Texas Human Resources Code properly pled as private causes of action?

2.  Are Relator's TMFPA claims properly pled under the applicable four-year limitations period for such claims?

3.  Are the allegations in the TAC sufficiently pled to satisfy Fed. R. Civ. P. 8(a) and 9(b)?

4.  Does the TAC provide a sufficient factual basis as to claims arising at all of Defendant's clinics?

## ARGUMENT

**I.   RELATOR'S CLAIMS UNDER § 32.039 OF THE TEXAS HUMAN RESOURCES CODE ARE PROPERLY PLED AS PRIVATE CAUSES OF ACTION.**

Defendant urges dismissal of Relator's claims under § 32.039 of the Texas Human Resources Code on the grounds that such section does not create a private right of action. Def. MTD Memo (Doc. 72), at 5. Defendant is mistaken. The TMFPA expressly creates a private right of action by providing that "a person may bring a civil action for a violation of Section 36.002 for the person and for the state." Tex. Hum. Res. Code § 36.101(a). Section 36.002 lists those acts that are unlawful under the TMFPA and expressly includes knowing engagement "in conduct that constitutes a violation under Section 32.039(b)." Tex. Hum. Res. Code § 36.002(13). As such, Relator's claims for violations of § 32.039(b) of the Texas Human Resources Code are properly pled as private causes of action.

## II.   RELATOR'S TMFPA CLAIMS ARE PROPERLY PLED PURSUANT TO THE APPLICABLE FOUR-YEAR STATUTE OF LIMITATIONS.

Defendant next argues that Relator's claims under the TMFPA should be dismissed to the extent they pre-date May 4, 2007.[1] Again, Defendant is mistaken. Defendant correctly notes that "[p]rior to May 4, 2007, the TMFPA provided: "If the state declines to take over the action, the court shall dismiss the action." Tex. Hum. Res. Code § 36.104(b). Def. MTD Memo, at 7.  Defendant is also correct that on May 4, 2007, this provision was amended to read, "If the state declines to take over the action, the person bringing the action may proceed without the state's participation." Tex. Hum. Res. Code § 36.104(b), effective May 4, 2007.  According to the legislative history of the 2007 amendment, the act "applies only to conduct that occurs on or after the effective date of this Act. Conduct that occurs before the effective date of this Act is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose." Acts 2007, 80th Leg., ch. 29 (S.B. 362), § 6. Defendant contends that this language bars Relator from bringing claims for violations under the TMFPA occurring prior to May 4, 2007. Such a result, however, is wholly illogical in light of the fact that Relator's lawsuit had not been filed prior to that date.

The legislative history provides that conduct occurring before May 4, 2007 "is governed by the law in effect at the time the conduct occurred, and that law is continued in effect for that purpose." With regard to a private individual's ability to maintain an action under the TMFPA, the "law in effect" prior to May 4, 2007 provided that "[i]f the state declines to take over the action, the court shall dismiss the action." Because this action was not filed prior to May 4, 2007, however, there was no opportunity for the state to make an intervention decision, and thus no opportunity for a court to make a decision regarding continuation or dismissal of the action.

---

[1] Defendant's argument that Relator's TMFPA claims (Counts IV and V) should be dismissed to the extent they are based on violations of Title XX needs no response, as these counts are based

Although Defendant cites case law interpreting the word "conduct" to mean "the actions of the defendant that are the subject of the relator's complaint, not the decision of the state not to intervene," *United States ex rel. Wall v. Vista Hospice Care, Inc.*, 778 F. Supp. 2d 709, 724 (N.D. Tex. 2011) (citing *United States ex rel. Fitzgerald v. Novation, L.L.C.*, No. 3:03-CV-1589-N, 2008 U.S. Dist. LEXIS 119702 (N.D. Tex. Sept. 17, 2008) (Godbey, J.)), this conclusion is inconsistent with decisional law from this jurisdiction, also issued subsequent to the 2007 TMFPA amendments, holding that the four-year statute of limitations set forth in Texas Civil Practice and Remedies Code § 16.051 applies to actions under the TMFPA in which the state declines to intervene. *United States ex rel. Foster v. Bristol-Myers Squibb Co.*, 587 F. Supp. 2d 805, 817 (E.D. Tex. 2008) (Heartfield, J.). According to *Foster*, because the TMFPA contains no express limitations period, *see* Tex. Hum. Res. Code §§ 36.001 *et seq.*, the applicable period is found in Section 16.051 of the Texas Civil Practice and Remedies Code, which provides that "[e]very action for which there is no express limitations period, except an action for the recovery of real property, must be brought not later than four years after the day the cause of action accrues." *See also United States ex rel. King v. Solvay S.A.*, 2011 U.S. Dist. LEXIS 117590 (S.D. Tex. Oct. 12, 2011) (citing *Foster* and stating that "the court finds nothing in . . . Texas law that supports Relators' position that the normal statute of limitations should not apply"). Relator filed this action on July 30, 2009. As such, Relator's TMFPA claims regarding PPGC's submission of fraudulent claims dating back to July 30, 2005 are proper as they were brought within four years of the time they accrued.

## III.   RELATOR'S FCA AND TMFPA CLAIMS ARE SUFFICIENTLY PLED TO SATISFY RULES 8(a) AND 9(b) OF THE FEDERAL RULES OF CIVIL PROCEDURE.

Despite Defendant's piecemeal approach to reading the TAC in an apparent attempt to

---

solely on violations of Medicaid, which are actionable under the TMFPA.

support its position that the TAC is insufficiently pled, when read as a whole, as it must be, the TAC

clearly provides sufficient factual information both to state claims for relief that are plausible on their

face as required by Rule 8(a) and to satisfy the particularity requirements of Rule 9(b). As the TAC

expressly alleges, "[a]ll polices and conduct complained of [t]herein occurred throughout the entire

period of Relator's employment at PPGC, from October 1999 through February 2009, at all of

PPGC's clinics." TAC, ¶ 12. Each such clinic is specifically identified in the TAC. *Id.*, ¶ 10. The TAC

further alleges that each of the individuals specifically identified in paragraph 12 engaged in the

conduct complained of, including submitting (and/or causing the submission of) false claims to the

government pursuant to the fraudulent scheme detailed throughout the TAC and specifically through

the claims submission process outlined in paragraph 34(i). Consequently, Defendant's attempt to

demonstrate the TAC's insufficiency based on the allegations of individual paragraphs should be

disregarded, as it utterly fails to account for the TAC's allegations as a whole.

### A.      The TAC Satisfies the Requirements of Rule 8(a).

Federal Rule of Civil Procedure 8(a)(2) requires that a pleading contain a "short and plain

statement of the claim showing that the pleader is entitled to relief."  According to the United States

Supreme Court, this means that "a complaint must contain sufficient factual matter, accepted as true,

to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). As the *Iqbal* Court

explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 129

S. Ct. at 1949. There can be no doubt that the allegations in the TAC, read as a cohesive whole,

satisfy this standard. Defendant's only argument to the contrary appears to be that certain paragraphs

within the TAC, standing alone, or as Defendant states it "without more," Def. MTD Memo, at 15,

5

are just as likely to demonstrate PPGC's compliance with applicable laws and regulations as they are to demonstrate fraud by PPGC. While it might be true that those allegations "without more" would be insufficient to satisfy Rule 8(a), Defendant ignores the fact that the TAC contains the necessary "more."

The TAC specifically alleges that PPGC's corporate directors explained to Relator, her fellow employees, and employees at PPGC's other eleven clinics that the revenue maximizing policies complained of in the TAC, including billing government health programs for a predetermined list of reimbursable services, were to be implemented "regardless of whether those services were medically necessary or ever actually provided to the patient." TAC, ¶ 25. In fact, Relator alleges that she "received emails from both corporate and local managers on the subject of raising Medicaid, WHP, and other governmental program pay-per-visit figures and total revenue for PPGC clinics by billing for services regardless of whether they were medically necessary or ever actually provided," TAC, ¶ 21, and that at clinic meetings PPGC directors "Durkin and Linton circulated documentation to this effect but instructed that such documents either be returned to them or destroyed following the meeting." *Id.*  The TAC goes on to allege that "[p]ursuant to PPGC policy, self-pay patients were provided services based on medical necessity.  WHP, Medicaid, and Title XX patients, however, were provided a series of predetermined services based on what those programs would pay for . . . ." TAC, ¶ 26 (emphasis in original).

Additionally, according to paragraphs 28-29 of the TAC, "Defendant PPGC's officers and directors instructed clinic personnel to bill the Texas and Federal government programs for birth control counseling as well as backup method birth control counseling *whether or not the counseling services were medically indicated or actually provided*. . . . [and] Relator regularly observed that clinic personnel, operating pursuant to the above-described PPGC corporate policy, entered billing

codes for having counseled a patient as to multiple birth control methods but did <u>not</u> actually counsel the patient regarding the use of each method." (Emphasis added). With regard to Defendant's policy of seeking government reimbursement for unqualified abortion-related services, the TAC clearly demonstrates that PPGC instructed its employees to falsify patient chart information regarding post-abortion visits in order to obtain reimbursement from Title XX, Medicaid and/or WHP, as the memorandum cited by Relator expressly directs clinic employees to document in a patient chart that the reason for a patient's visit was to have the Well Woman Exam when in truth the patient had clearly indicated the reason for the visit was a post-abortion follow-up. *See* TAC ¶ 31 ("if client requests post-ab check . . . [a]sk if she wants other services during the visit . . . [and] note in the subjective section [of the patient chart] . . . Client *here for WWE and to start on 'x' BCM*") (emphasis added). Despite Defendant's arguments to the contrary, such facts are entirely inconsistent with PPGC's legal obligations regarding Medicaid, WHP, and Title XX billing. Rather, these facts detail a knowingly fraudulent scheme that was in place for at least a ten-year period. Coupled with the description of the procedure through which PPGC submitted billing claims to the government for reimbursement, *see* TAC, ¶ 34(i), and the allegations that claims for the services complained of in the TAC were in fact submitted through such process, *see* TAC, ¶¶ 12, 31, 34(i), these facts are more than sufficient to "allow[] the court to draw the reasonable inference that [PPGC] is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949.

Nor do the exhibits attached to Defendant's Motion to Dismiss permit a contrary conclusion. After acknowledging that "[T]he Medicaid, Title XX, and WHP family planning programs are governed by a complicated mix of federal and state statutes, regulations, waivers, manuals, and bulletins promulgated by the United States Department of Health and Human Services ("DHHS"), the Texas Department of State Health Services ("DSHS"), and the Commission," Def. MTD Memo

at 19, Defendant invites the Court, on a 12(b)(6) motion, to resolve what are essentially factual issues. The Court should decline Defendant's invitation. But even were the Court inclined to delve into the "complicated mix" of statutes, regulations, manuals, etc., it must be noted that Defendant has supplied the Court with only <u>portions</u> of manuals from a <u>small segment</u> of years.

More critically, these manuals do not support Defendant's arguments. For example, Defendant states that "the Manual requires . . . [a]nnual Chlamydia testing for all sexually active females age 25 or younger, 'even if symptoms are not present.'" Def. MTD Memo, at 13. Defendant fails, however, to set forth the specifics of what the Manual actually states. First, the testing is not "require[d]," as Defendant represents; it is merely "recommended." Second, the Manual sets out three classes of women for Chlamydia testing and for whom testing is recommended:

"1. All sexually active females age 25 or younger at least annually, even if symptoms are not present;

"2. Women greater than 25 years old, if risk factors are present (*i.e.* a new sex partner or multiple sex partners);

"3. Women three to four months after treatment of a previous Chlamydia infection, especially in adolescents."

Such a set of criteria and guidelines hardly supports across the board Chlamydia testing for *all* patients whose bills were paid by government health programs as Relator contends was going on in Defendant's clinics.

 The same holds true with respect to Defendant's Exhibit 3. To say that "HIV screening is <u>recommended</u> at least one time for clients in health-care settings after the patient is notified that testing will be performed unless the client declines" is far more limited than encouraging and/or performing across the board HIV testing of *all* patients for *every* visit no matter the circumstances as

the TAC alleges. Another telling example of Defendant's selective use of documents is in Exhibit 4.
In footnote 12, page 14 of the MTD, Defendant asserts that "the following tests 'must' be provided
to Title X recipients 'in the provision of a contraceptive method, and may be provided for the
maintenance of health status and/or diagnostic purposes, either on-site or by referral' . . . Gonorrhea
and chlamydia test." Exhibit 4, however, states that these tests must be provided "if required"—two
words PP curiously fails to quote here.

 In short, even if the adjudication of fact issues based on a "complicated mix" of statutes,
regulations, manuals, bulletins, etc., were appropriate at this stage of litigation (which it is not),
Defendant's selective and, frankly, misleading presentation of these documents makes such
adjudication singularly inappropriate in this case.

### B.      The TAC is Pled with Sufficient Particularity to Satisfy Rule 9(b).

Rule 9(b) of the Federal Rules of Civil Procedure requires a party alleging fraud to "state
with particularity the circumstances constituting fraud." This standard applies to *qui tam* pleadings
such as the TAC here. *United States ex rel. Grubbs v. Kanneganti*, 565 F.3d 180, 185 (5th Cir.
2009). In discussing precisely how the Rule 9(b) standard is to be applied, the *Grubbs* court
expressly acknowledged that "'Rule 9(b)'s ultimate meaning is context-specific,' and thus there is
no single construction of Rule 9(b) that applies in all contexts." *Id.* at 188 (quoting *Williams v. WMX
Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997)).

While the submission of a false claim to the government is the *sine qua non* of a claim under
Section 3729(a)(1)(A) of the False Claims Act, *id.* at 188, the Fifth Circuit has expressly rejected the
contention that "the contents of the presented bill itself . . . must be pled with particular detail and
not inferred from the circumstances," *id.* at 190, and held that

> a plaintiff does not necessarily need the exact dollar amounts, billing numbers, or
> dates to prove to a preponderance that fraudulent bills were actually submitted. To

require these details at pleading is one small step shy of requiring production of actual documentation with the complaint, a level of proof not demanded to win at trial and significantly more than any federal pleading rule contemplates.

*Id.* Indeed, the *Grubbs* court rightly recognized that "[t]he particular circumstances constituting the fraudulent presentment are often harbored in the scheme," *id.*, because

[s]tanding alone, raw bills—even with numbers, dates, and amounts—are not fraud without an underlying scheme to submit the bills for unperformed or unnecessary work. It is the scheme in which particular circumstances constituting fraud may be found that make it highly likely the fraud was consummated through the presentment of false bills.

*Id.* With these principles in mind, the court held that to satisfy Rule 9(b)'s particularly requirements as to a claim under the False Claims Act for presentment of false claims, "a relator's complaint, if it cannot allege the details of an actually submitted false claim, may nevertheless survive by alleging particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted." *Id.*

The TAC satisfies this standard. Relator has set forth numerous details regarding Defendant's fraudulent policy scheme, expressly implemented to obtain reimbursement for services that were not medically necessary, not covered by government health programs from whom the reimbursement was sought, and not actually provided to patients. Specifically, the TAC identifies the individuals responsible for creating and implementing each of the policies complained of, *see* TAC, ¶ 12; the individuals involved in the actual fraudulent conduct, including the submission of billing codes and claims for the improper services, *id.*, ¶¶ 12, 32[2]; the specific types of medical services for which PPGC fraudulently billed, including an example of a specific billing code used, *id.*, ¶¶ 26-31; 33[3];

---

2 Contrary to Defendant's assertion, *see* Def. MTD Memo, at 19, Relator expressly acknowledges that she was among those employees who followed the fraudulent policy instructions provided by PPGC officers and directors.

3 Once again, Defendant misunderstands the purpose of Relator's allegations. The chart provided in

the time period during which these policies were consistently being implemented, *id.*, ¶ 12; and the clinics at which these policies were in place. *Id.*, ¶¶ 10, 12.  The TAC even describes the specific process by which Defendant and its agents caused the submission of such false claims to the government. *Id.*, ¶ 34(i). The TAC clearly alleges "the 'who, what, when, where, and how' of the alleged fraud," *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp.*, 125 F.3d 899, 903 (5th Cir. 1997) (quoting *Williams*, 112 F.3d at 179), with sufficient particularity "to achieve the remedial purpose of the False Claim[s] Act." *Grubbs*, 565 F.3d at 190. As the TAC indicates, these facts are based on Relator's personal experiences and observations of such conduct, as well as her personal receipt of express communications regarding this fraudulent scheme from the PPGC directors responsible for overseeing its implementation. TAC, ¶¶ 20-25.

As the court found with the complaint at issue in *Grubbs*, the TAC "sets out the particular workings of a scheme that was communicated directly to the relator by those perpetrating the fraud." 565 F.3d at 191. "Taking the allegations of the scheme and the relator's own alleged experience as true . . . amounts to more than probable, nigh likely, circumstantial evidence," *id.* at 192, that PPGC's policy scheme caused its billing system ultimately to submit fraudulent claims to the government. As to the fraudulent scheme at issue before it, the *Grubbs* court concluded,

> It would stretch the imagination to infer the inverse; that the defendant doctors go through the charade of meeting with newly hired doctors to describe their fraudulent practice and that they continually record unprovided services only for the scheme to deviate from the regular billing track at the last moment so that the recorded, but unprovided, services never get billed.

---

paragraph 33 of the TAC is provided by way of example, based upon Relator's ten-year experience and, more importantly, cannot be read in isolation. As the TAC unmistakably explains, the discrepancy between the services provided to self-pay patients and Medicaid / Title XX patients was a direct result of Defendant's express policy requiring employees to bill different services for patients based not on medical necessity but solely on the source of payment for the services.

*Id.* So, too, here. "That fraudulent bills were presented to the Government is the logical conclusion of the particular allegations in [Relator's TAC] even though it does not include exact billing numbers or amounts." *Id.*

That the TAC does not provide specific dates on which the fraudulent activity occurred is not fatal to Relator's claims. First, as a practical matter, the fraudulent schemed described in the TAC spanned the period of a full ten years, such that any given day during that period could be identified, as Defendant's clinics treated patients daily whose bills were being paid by Medicaid, WHP, and/or Title XX. Further, *Grubbs* and its progeny make clear that no one criterion is required to satisfy the particularity requirements of Rule 9(b) so long as the allegations provide "reliable indicia that lead to a strong inference that claims were actually submitted." *Grubbs*, 565 F.3d at 190; *King*, 2011 U.S. Dist. LEXIS 117590, at *50-53 (rejecting position that "Relators' failure to provide 'details like dates and descriptions of pharmacies submitting claims' is fatal to their claim" because the description of the fraudulent scheme, including the allegations that Defendant's employees "put stickers on samples reminding physicians that the drugs were covered by Medicaid and that Solvay district managers used prescribing information data to shape their marketing pitches to individual physicians who wrote prescriptions to individuals on Medicaid," when taken together, "raise[d] a strong inference that claims were actually submitted to the government for reimbursement"); *Wagemann v. Doctor's Hosp. of Slidell, LLC*, 2010 U.S. Dist. LEXIS 79433, at *12 (E.D. La. Aug. 5, 2010) (holding, in reliance on *Grubbs*, that "should a plaintiff allege a general scheme to defraud the government, when the scheme occurred, those involved, its mechanics, an explanation of how the claims were false, and a description of the billing system, the 'time, place, contents, and identity' standard is met"). *See also United States ex rel. King v. Alcon Labs.*, 232 F.R.D. 568, 570 (N.D. Tex. 2005) ("[I]n cases where the plaintiff is alleging that the fraud occurred over a multi-year period, the

plaintiff is not required to allege all facts supporting each and every instance when each defendant engaged in fraud. In addition, . . . where fraud occurred over an extended period of time and consists of numerous acts, the specificity requirements of Rule 9(b) are applied less stringently"); *accord United States ex rel. Davis v. Lockheed Martin Corp.*, 2010 U.S. Dist. LEXIS 120730, *7-8 (N.D. Tex. Nov. 15, 2010).

Relator's allegations regarding fraudulent creation of patient billing and chart records are also sufficient to satisfy Rule 9(b). Both the FCA and the TMFPA impose civil liability against those who make or cause to be made a false record or statement that is material to a false or fraudulent claim. 31 U.S.C. § 3729(a)(1)(B); Tex. Hum. Res. Code § 36.002(1). The TAC specifically alleges two ways in which Defendant violated these provisions. First, the TAC alleges that PPGC directors (specifically identified in paragraph 12) trained clinic employees to fill out each patient's "superbill" *before* services were rendered, based on who would be paying the patient's bill. TAC, ¶¶ 34, 34(c). After the patient's visit, either the receptionist or one of the Health Center Assistants (specifically identified in paragraph 12) would double check the "superbill" to ensure that all reimbursable services had been marked thereon, "without any verification that the services had actually been provided. Specifically, instead of using the patient chart (which should document services actually rendered) to fill out the super bill, clinic staff were trained to bill automatically the pre-determined list of procedures and services based on whether the patient was self-pay, Medicaid, or Title XX." *Id.*, ¶ 34(h). These clinic employees would then enter the information marked on the "superbill" into PPGC's billing software program, and Melanie Wood submitted each clinic's weekly billing codes to the government health care programs (WHP, Medicaid, and Title XX). *Id.*, ¶ 34(i).

The second way in which Defendant caused the creation of fraudulent records material to false claims was through its chart review process. As the TAC sets forth, pursuant to Defendant's

express policies, clinic employees performed this process of altering patient medical charts (several days *after* the patient's visit) so that the documentation in the chart reflected that all services marked on the patient's "superbill" had actually been provided. TAC, ¶ 34(j). "The stated purpose" of this process, the TAC alleges, "was to ensure that patient charts always supported the claims submitted to the government." *Id.*

Defendant contends that the "superbill" allegations are insufficient under Rule 9(b) because they do not "indicate that the allegedly fraudulent claims were submitted to the government." Def. MTD Memo, at 19. As discussed previously herein, the TAC, taken as a whole, is pled with sufficient particularity to provide reliable indicia that false claims for the types of services described in the TAC <u>were actually submitted</u> to the government. *See* TAC, ¶ 34(i) (setting forth PPGC's claims submission process). In any event, Defendant misunderstands the necessary showing here. Whether such claims were ever actually submitted is irrelevant to Relator's claims regarding the creation of false records and statements material to the payment of claims (Counts III and VI), as liability for such conduct depends solely upon the making of the fraudulent record or statement, not presentment of a claim to the government. *Grubbs*, 565 F.3d at 193 ("[T]he recording of a false record, when it is made with the requisite intent, is enough to satisfy the statute; we need not make the step of inferring that the record actually caused a claim to be presented to the Government").

## IV. THE TAC PROVIDES A SUFFICIENT FACTUAL BASIS REGARDING ALL OF DEFENDANT'S CLINICS.

Defendant contends that the TAC fails to provide a sufficient factual basis as to claims arising outside the Lufkin clinic because Relator does not allege that she "worked or consulted with any employee at any other clinic who implemented the alleged policies." Def. MTD Memo, at 7-8. Defendant claims that the only relevant allegation in the TAC is that the alleged scheme was implemented "company-wide" and that such information is based merely on Relator's "impressions

of meetings with corporate personnel at the *Lufkin* clinic." *Id.* at 8. This position is perplexing in light of the facts actually alleged on the face of the TAC.

For example, the TAC clearly alleges that Relator "personally heard corporate officers, including Peter Durkin (President and CEO of PPGC), and Melanie Linton (Sr. VP of PPGC) expressly state that the policies and strategies complained of herein were being implemented at all PPGC clinics, not just the Lufkin Clinic." TAC, ¶ 22. Contrary to Defendant's assertion, this is not an allegation of a mere impression but of express statements made by those responsible for implementing the fraudulent policy scheme and personally heard by Relator. Moreover, Defendant completely ignores the facts alleged in paragraphs 23-24, including that (1) the Lufkin clinic directors, immediately after attending company-wide policy meetings in Houston, directly communicated to Relator that the policies being implemented at the Lufkin clinic were likewise in place at Defendant's other clinics; (2) Relator received from specified PPGG officers memoranda and emails discussing the fraudulent policy scheme and addressed to employees at all of Defendant's clinics; and (3) a specific instance in which a specified Lufkin clinic employee was sent by PPGC corporate directors to a different clinic for the express purpose of being trained regarding implementation and application of the fraudulent policies. As with Relator's other allegations, these facts sufficiently describe part of Defendant's overall fraudulent scheme and provide reliable indicia that false claims were submitted to the government pursuant to this scheme.

Nor do the cases upon which Defendant relies to support its position in this regard provide PPGC any assistance. Defendant cites one case in which the court held insufficient a relator's "general pleading, 'upon information and belief,' that similar frauds were also perpetrated in [other states.]" *Wall*, 778 F. Supp. 2d at 723. Defendant's reliance on *Wall* is misplaced for two important reasons. First, the TAC allegations regarding clinics other than the Lufkin clinic are not pled merely

on Relator's "information and belief," but on her personal experience of hearing direct statements and receiving memoranda and emails from those directly responsible for implementing the policies stating that they were in place at all of PPGC's clinics. TAC, ¶¶ 22-24. Second, even if such allegations were deemed to be based on mere "information and belief," Relator has satisfied the particularity requirement, as discussed in *Wall*, that "where the allegations are stated on information and belief, a plaintiff must set forth in the complaint the facts supporting the belief." 778 F. Supp. 2d at 723. The facts set forth in paragraphs 22-24 amply support Relator's claim that the fraudulent policy scheme in place at the Lufkin clinic was in place at all other PPGC clinics.

The other two cases Defendant cites likewise fail to provide PPGC any help. As an initial matter, both cases pre-date the 5th Circuit *Grubbs* decision, holding that the particularity requirements of Rule 9(b) may be satisfied by details of a fraudulent scheme paired with reliable indicia that false claims were actually submitted. The TAC facts regarding implementation of PPGC's fraudulent policy scheme at all of its clinics satisfy this standard. Furthermore, *Sealed Appellant I v. Sealed Appellee I* held that because the complaint failed to allege any facts explaining how relator knew of false claims submitted after his termination, his allegations beyond that point in time were insufficient to satisfy Rule 9(b). 156 Fed. App'x 630, 633 (5th Cir. 2005). Here, by contrast, Relator has clearly explained the bases for her allegations regarding clinics other than the Lufkin clinic: specific conversations with and documents received from PPGC corporate officers and directors. Similarly, in *United States ex rel. Harris v. Alan Ritchey, Inc.*, the complaint included only the general allegation that "[f]alse claims were also initiated at ARI's other MTESC facilities." 2006 U.S. Dist. LEXIS 91921, *16 (W.D. Wash. Dec. 20, 2006). Because the relator "provide[d] no details of the alleged fraud at other plants," *id.*, at *17, the court held the allegations insufficient under Rule 9(b). The TAC, however, clearly alleges the details of the fraudulent scheme at issue,

16

which Defendant's corporate officers and directors expressly stated, both verbally and in writing, were being implemented at all clinics. Because the allegations in the TAC are sufficiently pled as to the fraudulent scheme in place at the Lufkin clinic, and Relator has provided facts (rather than generalized allegations on "information and belief") demonstrating that the same policy scheme was in place at all other clinics, her claims as to clinics other than the Lufkin clinic are pled with sufficient particularity to satisfy Rule 9(b).

## CONCLUSION

For the foregoing reasons, Defendant's Motion to Dismiss Relator's Third Amended Complaint should be denied.

Respectfully submitted,

Mike Love
**MIKE LOVE & ASSOCIATES, L.L.C.**
Texas Bar No. 24004778
202 E. Lufkin Ave., Suite 201
Lufkin, Texas 75901
Tel. (936) 632-2000
Fax (936) 632-2005
mikelove@texaslawoffice.com

Francis J. Manion, Esq.
Geoffrey R. Surtees, Esq.
**AMERICAN CENTER FOR LAW & JUSTICE**
6375 New Hope Rd.
New Hope, KY 40052
Tel. (502) 549-7020
Fax (502) 549-5252
fmanion@aol.com
gsurtees@aclj.org

Edward L. White, III, Esq.
**AMERICAN CENTER FOR LAW & JUSTICE**
5068 Plymouth Rd.
Ann Arbor, MI 48105
Tel. (734) 662-2984
Fax (734) 302-1758

ewhite@aclj.org

Jay Alan Sekulow, Esq.
Stuart J. Roth, Esq.
**AMERICAN CENTER FOR LAW & JUSTICE**
201 Maryland Ave., N.E.
Washington, DC 20002
Tel. (202) 546-8890
Fax (202) 546-9309
sekulow@aclj.org
sjr@aclj-dc.org

Larry L. Crain, Esq.
/s/ Carly F. Gammill
Carly F. Gammill
**AMERICAN CENTER FOR LAW & JUSTICE**
5214 Maryland Way, Suite 402
Brentwood, TN 37027
Tel.(615) 376-2600
Fax (615) 345-6009
lcrain@brentwoodlaw.com
cgammill@aclj-dc.org

***Attorneys for Relator***

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on December 5, 2011, a copy of the foregoing Response in Opposition to Defendants' Motion to Dismiss Third Amended Complaint was electronically filed on the CM/ECF system, which will automatically serve a Notice of Electronic Filing on the following attorneys for Defendant Planned Parenthood Gulf Coast f/k/a Planned Parenthood of Houston and Southeast Texas, Inc.:

KING & SPALDING LLP
James W. Boswell
1180 Peachtree St. N.E.
Atlanta, GA 30309-3521
Tel.: (404) 572-4600
Fax: (404) 572-5100
jboswell@kslaw.com

David L. Schwan
1100 Louisiana St., Suite 4000
Houston, TX 77002
Tel.: (713) 751-3200
Fax: (713) 751-3290
dschwan@kslaw.com

THE HEARTFIELD LAW FIRM
J. Thad Heartfield
M. Dru Montgomery
2195 Dowlen Road
Beaumont, Texas 77706
Tel.: (409) 866-3318
Fax: (409) 866-5789
thad@jth-law.com
dru@jth-law.com

Electronic notice will also be provided to the following:

J Kevin McClendon
US Attorney's Office - Plano
101 E Park Blvd, Suite 500
Plano, TX 75074
972.509.1201
Kevin.McClendon@usdoj.gov

Mark Coffee
Office of the Attorney General of Texas
P.O. Box 12548
Austin, TX 78711-2548
512.936.0260
512.469.3183
Mark.Coffee@oag.state.tx.us

/s/ Carly F. Gammill
Carly F. Gammill